# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>ex rel. TRACI JONES, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>BRENDA SPAHN dba )<br>FREEDOM RAIN MINISTRIES )<br>dba THE LOVELADY CENTER )<br>dba FREEDOM RAIN, INC. )<br> )<br> )<br>Defendants. ) | FILED UNDER SEAL<br>PURSUANT TO<br>31 U.S.C. §3730(b)(2) |

## *QUI TAM* COMPLAINT

RELATOR Traci Jones brings this *qui tam* action in the name of the United States of America and alleges as follows:

### SUMMARY INTRODUCTION

1. This is an action by qui tam Relator Traci Jones, on behalf of the United States, against Brenda Spahn ("Spahn") dba Freedom Rain Ministries dba The Lovelady Center dba Freedom Rain Ministries, Inc. to recover penalties and damages arising from false claims Spahn has made in an effort to secure federal monies allocated to the states pursuant to the Food Stamp Act of 1977, as amended, 7 U.S.C. §§ 2011 *et seq.*

Ms. Jones worked as a client representative for The Lovelady Center from July 2006 through August 2007. As such Jones was privy to intimate details concerning the defendant's applications for food stamp assistance and the defendant's use of federal funding received as a result of those applications. Jones was frequently in the presence of Spahn and other managers of the Lovelady Center, had close contact with residents of the Lovelady Center and was physically present during the day to day operations of the Lovelady Center, and thus had firsthand knowledge regarding the Center's food stamp program and the use of funds received pursuant to the State of Alabama's food stamp program.

## PARTIES

2. Relator Traci Jones ("Jones") is an adult resident of Jefferson County, Alabama.

3. Defendant Brenda Spahn is an adult resident of the State of Alabama and conducts business in Birmingham, Alabama as or on behalf of Freedom Rain, Inc., an Alabama corporation, fka Credit Relief Counseling Services, Inc. aka Freedom Rain Ministries aka the Lovelady Center ("Center"), all formerly known as Debt Relief Counseling Services, Inc.

4. Freedom Rain, Inc. dba the Lovelady Center in Birmingham, Alabama purports to be a non-profit organization governed by the provisions of §501(c)(3) of the Internal Revenue Code.

## JURISDICTION & VENUE

5. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

6. This Court maintains subject matter jurisdiction over this action pursuant 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

7. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because: (i) Spahn resides in the Northern District of Alabama; (ii) Spahn transacts business in this district and did so at all times relevant to this complaint; (iii) Freedom Rain, Inc., Freedom Rain Ministries and the Lovelady Center transact business in this district and, as averred below, (iv) Spahn committed acts proscribed by 31 U.S.C. §§ 3729 *et seq* - acts giving rise to this action - within this district.

8. Before filing this complaint, Jones served a copy of same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements of 31 U.S.C. §3730(b)(2).

9. Jones has complied with all other conditions precedent to bringing this action.

10. Jones is the original source of, and has direct and independent knowledge of, the non-publicly disclosed information on which many allegations herein are based, and has voluntarily provided such information to the Government before filing this action.

## FACTUAL ALLEGATIONS

### *The Food Stamp Act*

11. In 1977 the Food Stamp Act became law. 7 U.S.C. §2011 *et seq*. Pursuant to the Food Stamp Act, the United States government provides federal funding to the State of Alabama and the State of Alabama administers the federal food stamp program by following federal rules promulgated under the Act.

12. In order to receive food stamp funding, the Food Stamp Act requires Alabama, among other things, to enforce criteria for determining the eligibility of its residents to participate in the food stamp program, and distribute and monitor federal food stamp funds.

13. The Lovelady Center, located at 7916 2nd Avenue South in Birmingham, Alabama purports to be a faith-based program that offers living quarters for women and their children while the women receive job training or other services to help them make the transition from prison inmate to private citizen. The Center refers to these women and children as "clients."

14. The executive director of the Center is the defendant, Brenda Spahn.

At all times relevant to the allegations herein, Spahn maintained exclusive control of the Center and its activities.

15. In 2004, Spahn and her daughter, Melinda McGahee, were convicted for tax fraud in the Northern District of Alabama. See U.S. v. Spahn, 2:03-CR-00628-RBP.

16. Jones became associated with the Lovelady Center in June 2006. She began by teaching Center clients under the Sex and Family Education (SAFE) program. In July 2006, the Center hired Jones as a client representative. Jones' duties included managing the day to day affairs of the clients. One weekend per month Jones had full responsibility for the entire Center. Jones remained employed by the Center until August 2007.

17. During her employment there were up to 300 clients and 70 children residing at the Center. Approximately 90% of the clients had had problems with illegal drug use.

18. When Jones first became associated with the Center, many of the clients applied for food stamps directly through the State Food Stamp Office. When the State discovered that the clients were being fed by the Center, the State began denying client food stamp applications. At this time, the food prepared for clients was of very good quality and was being paid for by charitable donations and other funding secured by the Center.

19. Spahn then set up an internal food stamp program wherein the clients would apply for food stamps through the Center and the Center would receive electronic food stamp cards ("EBTs") issued to individual clients that could be "swiped" through a special food stamp machine connected to the State Food Stamp Office. The Center, operating as a Retail Food Store within the meaning of 7 U.S.C. §2012(g)(5) and (k)(2), is subject to all related regulations. When a food stamp card is swiped, the Center receives federal food stamp funds. Periodically, the State electronically deposits the federal funds into the Center's operating account at a local bank.

20. When a new client is received by the Center, the client is required by Spahn to fill out an application for food stamps. Any client who refuses to apply for food stamps is told by Spahn to leave the Center.

21. Federal and state regulations governing food stamp funds prohibit certain persons with narcotics or firearm convictions from participation in the food stamp program.

22. All clients applying for food stamps are instructed by Spahn or her agents and employees to deny or not disclose any previous convictions related to illegal drugs or firearms.

23. Eligibility for food stamp benefits is also determined, by among other things, the applicant's employment status.

24. Many Center clients are also employees of the Center, Spahn and her family, or outside businesses. When applying for food stamp funds, these client/employees are instructed by Spahn and her agents and employees to state on the food stamp applications that they were not employed.

25. Spahn and the Center keep and maintain control of the clients' EBT cards. Spahn refuses to return food stamp cards to women who are leaving the Center and the Center continues to swipe EBTs even after a client no longer resides at the Center. Thus, the Center would receive federal food stamp funds to which it was not entitled.

26. After the Center's food stamp program was set up, Spahn and her family fed daily on high quality food which had been purchased with food stamp funds. Spahn also fed private persons with food purchased from food stamp money. The quality of food made available to Center clients, however, declined and is served only in limited amounts. In violation of applicable statutes and regulations, clients are often required to pay for food that had been purchased with food stamp funds. The amount of food stamp funds received by the Center greatly exceeds the value of the food distributed to clients.

27. Each described act or omission was knowingly committed or directed by Spahn in an attempt to secure federal funds through the food stamp program, or was knowingly committed by Spahn in an attempt to retain federal funds already

paid to her and the business entities identified herein, and to avoid disgorgement of those funds.

28. Spahn made the representations and misrepresentations identified above, by act or omission, in a systematic attempt to knowingly cause the payment of federal funds for her personal use. Spahn concealed material facts when making representations. Spahn made knowing misrepresentations concerning eligibility for food stamp funding, the use of said funds and the Center's compliance with applicable statutes and regulations.

COUNT I: Violations of the False Claims Act

29. Each of the foregoing allegations is re-alleged and incorporated herein.

30. As described in this Complaint, Defendant Spahn, individually, and by and through her agents and employees, and those of the business entities described herein,: (i) knowingly presented, or caused to be presented, to the State of Alabama and United States Government, false or fraudulent claims for payment or approval; (ii) knowingly made, used, or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the Government; (iii) knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government; and, (iv) knowingly misappropriated and

used for personal gain Government funds obtained pursuant to her false claims and representations.

31. Defendant Spahn authorized and ratified, and/or aided and abetted, all the violations of the False Claims Act committed by the various officers, agents, and employees of the business entities identified herein.

32. The United States Government and the public fisc have been damaged as a result of defendant Spahn's violations of the False Claims Act.

WHEREFORE, Relator Traci Jones, on behalf of herself and the United States Government, prays:

(i) that this Court enter a judgment against defendant in an amount equal to three times the amount of damages the United States has sustained as a result of defendant's violations of the False Claims Act;

(ii) that this Court enter a judgment against defendant for a civil penalty of $10,000 for each of defendant's violations of the False Claims Act;

(iii) that Relator Jones recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(iv) that Relator Jones be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government proceeds with this action,

Relator Jones be awarded 25% of the proceeds of the action or some lesser amount as deemed appropriate by the Court;

(vi) that in the event the United States Government does not proceed with this action, Relator Jones be awarded 30% of the proceeds of the action or some lesser amount as deemed appropriate by the Court;

(vii) that Relator Jones be awarded prejudgment interest;

and

(viii) that Relator Jones and the United States of America receive all relief to which either or both may be entitled at law or in equity.

PLAINTIFF DEMANDS TRIAL BY JURY

William M. Acker, III
ASB-5522-C60W
Counsel for Jones

OF COUNSEL:

2015 1st Avenue North
Birmingham, AL 35203
(205) 458-1154
marshacker@att.net

Thomas F. Talty
ASB-7793-T51T
Counsel for Jones

OF COUNSEL:

2015 1st Avenue North
Birmingham, AL 35203
(205) 458-1111
ttalty@bellsouth.net